## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Quality Bicycle Products, Inc.,

                                    Plaintiff,

v.

BikeBaron, LLC, Sinclair Imports, LLC,
& Lance Donnell,

                                    Defendants.

Civ. No. 12-2397 (RHK/TNL)
**MEMORANDUM OPINION
AND ORDER**

---

Matthew S. Moore, General Counsel, Quality Bicycle Products, Inc., Bloomington, Minnesota, for Plaintiff.

Brock P. Alton, Roger H. Gross, Gislason & Hunter LLP, Minneapolis, Minnesota, for Defendants.

---

### INTRODUCTION

In this Action, Plaintiff Quality Bicycle Products, Inc. ("QBP") alleges that Defendants Sinclair Imports, Inc. ("Sinclair"), BikeBaron LLC ("BikeBaron"), and their owner, Lance Donnell, have unlawfully used its copyrighted images of bicycle parts and its trademarks in their online advertising.  Defendants move to dismiss QBP's claims for lack of personal jurisdiction or, alternatively, to transfer venue or, alternatively, to enforce the parties' purported settlement agreement.  For the reasons set forth below,

Defendants' Motion to dismiss for lack of personal jurisdiction will be granted as to

Donnell only and their Motion to transfer venue will be denied.[1]

## BACKGROUND

*The Parties*

QBP is a wholesale distributor of bicycles and bicycle products. (Compl. ¶ 9.) It

is a Minnesota corporation with its principal place of business in Bloomington,

Minnesota. (Id. ¶ 5.) Sinclair and its sister company, BikeBaron, sell bicycle parts to

retailers and to customers directly. (Id. ¶¶ 19–20.) Both Sinclair and BikeBaron are

Nevada companies with their headquarters and principal places of business in Reno,

Nevada. (Donnell Aff. ¶ II.) Donnell is a Nevada resident, the President and Chief

Executive Officer of Sinclair and BikeBaron, and owns 50% of each. (Id. ¶ I.)

Neither Sinclair nor BikeBaron is registered to do business in Minnesota nor has

an office, inventory, bank account, property, phone number, address, employees or agents

in Minnesota. (Id. ¶ IV.) Neither business has purchased any advertisements targeted at

Minnesota. Both companies sell to Minnesota residents or retailers, although sales to

Minnesota comprise less than one percent of each business's total sales volume. (Id.

¶ VII.) BikeBaron conducts advertising and sales through its website,

www.bikebaron.com, and its eBay store; all of its sales are prepaid online. (Id. ¶¶ VI–

VII.) Most of Sinclair's sales are "pre-paid by credit card or are COD," but some

retailers "may receive" monthly statements in the mail. (Id. ¶ VII.) Donnell has visited

---

[1] The Court will address the Motion to Enforce Settlement (styled as a Motion to Dismiss
for Failure to State a Claim) in a later order.

Minnesota only once, on vacation nearly thirty years ago, and otherwise has no contacts with Minnesota.  (Id. ¶ II.)

*QBP's Claims*

As part of its business, QBP creates and copyrights images of the products it distributes.  (Compl. ¶ 12.)  It uses these images in its catalog and on its website, but also licenses the images to others.  (Id. ¶¶ 13–15.)  QBP alleges that Defendants used QBP's copyrighted images on www.bikebaron.com and on eBay to promote and sell their products without QBP's authorization.  (Id. ¶ 21 & Ex. B.)  QBP also alleges that Defendants have infringed its trademarks by using the phrase "Quality Bike Parts." (Id. ¶ 22.)

In September 2012, QBP filed the instant action against Defendants asserting claims for violations of the Lanham Act, Copyright Act, Minnesota Deceptive Trade Practices Act, and Minnesota's trademark statutes, and claims for conspiracy and unfair competition.  In its Complaint, QBP requested both money damages and injunctive relief. Defendants now move to dismiss or, alternatively, to transfer venue or, alternatively, to enforce the purported settlement agreement between the parties.  The Motion has been fully briefed, the Court heard oral arguments on June 27, 2013, and it is now ripe for disposition.

## ANALYSIS

### I.      Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), QBP must make a prima facie showing that jurisdiction exists.  E.g., Johnson v.

Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Lakin v. Prudential Sec., Inc., 348 F.3d

704, 706 n.3 (8th Cir. 2003).  It can do so by proffering sufficient evidence "to support a

reasonable inference that the defendant[] can be subjected to jurisdiction within the

[forum] state."  K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th

Cir. 2011) (quotation and citation omitted).  QBP's "showing must be tested, not by the

pleadings alone, but by the affidavits and exhibits supporting or opposing the motion."

Id. at 592 (quotation and citations omitted).  And where the Court has not held an

evidentiary hearing (which no party has requested here), the evidence must be viewed in

the light most favorable to the plaintiff.  E.g., Pangaea, Inc. v. Flying Burrito LLC, 647

F.3d 741, 745 (8th Cir. 2011).

     To determine whether QBP has satisfied its burden, the Court must ask two

questions.  First, has Minnesota's long-arm statute been satisfied?  Second, would

exercising jurisdiction comport with the Due Process Clause of the Fifth Amendment?

E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998).

These two inquiries collapse into one, however, because Minnesota's long-arm statute

extends jurisdiction to the full extent of the Due Process Clause.  Marquette Nat'l Bank

of Minneapolis v. Norris, 270 N.W.2d 290, 294 (Minn. 1978) ("[T]he statutory and

constitutional requirements for exercise of personal jurisdiction are coextensive.").

     Due process requires that a defendant have sufficient "minimum contacts with [the

forum state] such that maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

(citation omitted); accord, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

286, 291–92 (1980).  "The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there."  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), and Woodson, 444 U.S. at 297).

The Eighth Circuit has instructed district courts to consider five factors when determining whether jurisdiction exists:  (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties.  Pecoraro, 340 F.3d at 562 (citation omitted).  The Minnesota Supreme Court has adopted the same five-factor test.  E.g., Dent-Air, Inc. v. Beech Mountain Air Serv., Inc., 332 N.W.2d 904, 907 (Minn. 1983).  The first three factors are of primary importance, while the last two factors are considered secondary. Pecoraro, 340 F.3d at 562; Dent-Air, 332 N.W.2d at 907.

The third factor—the relation of the cause of action to the contacts—distinguishes specific jurisdiction from general jurisdiction.  Specific jurisdiction exists over causes of action arising out of or related to a defendant's contacts with the forum state, while general jurisdiction is broader and reaches *any* cause of action against a defendant whose forum contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate."  Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131

S. Ct. 2846, 2851 (2011) (citation omitted).  Only specific jurisdiction is at issue in this case.[2]

### A.    BikeBaron's and Sinclair's Contacts

The Court will first address jurisdiction over BikeBaron and Sinclair.  QBP alleges they are subject to specific personal jurisdiction in Minnesota because they "each advertise, sell, and distribute goods in this state using copyrighted images at issue in this dispute."  (Compl. ¶ 3.)  BikeBaron and Sinclair both acknowledge selling to Minnesota residents.  Although the number, frequency, and value of such sales are unknown, Defendants have stated that they comprise less than one percent of the companies' total sales.  Without more information, the quantity of Defendants' contacts is difficult to evaluate.  See Lakin, 348 F.3d at 709 ("Percentage of a company's sales in a given state are generally irrelevant" to personal jurisdiction analysis because the analysis should focus on whether the company's contacts are substantial for the forum, not substantial for the defendant.).  The Court's analysis will focus instead on the nature and quality of their contacts.

QBP alleges that the Defendant companies' contacts with Minnesota consist of the advertising, sales, and shipment of their products to Minnesota residents through their websites, www.bikebaron.com and the BikeBaron800 eBay store.  BikeBaron acknowledges selling to Minnesota residents through these websites, but Sinclair's relationship to the websites is not explained.  For purposes of this Motion, the Court will

---

[2] Although QBP pleaded both specific and general jurisdiction in its Complaint, it raises only specific jurisdiction in its Memorandum and the Court will restrict its analysis accordingly.

assume QBP's allegation is correct and both businesses own and/or use the websites.  See

Johnson v. Arden, 614 F.3d 785, 797 (8th Cir. 2010) ("As noted, [the defendant] denies

ownership of this website, but for purposes of our review . . . we assume that [the

defendant] owns the site in question.").  Where a defendant's contacts with the forum

state "have occurred almost exclusively over the [i]nternet," as is the case here, the Court

analyzes specific personal jurisdiction using the "sliding scale" test laid out in Zippo

Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

See  Lakin, 348 F.3d at 711 (adopting Zippo test).  Under this test, the more "interactive"

an entity's website is, the more likely that personal jurisdiction over the entity is proper.

Conversely, the more "passive" its website is, the less likely that entity has the "minimum

contacts" necessary for personal jurisdiction.  "At one end of the spectrum are situations

where a defendant clearly does business over the [i]nternet. . . . At the opposite end are

situations where a defendant has simply posted information on an [i]nternet [w]eb site

which is accessible to users in foreign jurisdictions."  Zippo, 952 F. Supp. at 1124.

        Defendants compare their websites to Prudential's website in Lakin, which the

Eighth Circuit deemed a "middle ground" website.  348 F.3d at 712.  The Court does not

find this comparison fitting.  Viewers of Prudential's website could only contact or

communicate with Prudential through it—for example, by filling out a loan application

online and transmitting it to Prudential through the website.  Id.  Prudential did not enter

into or complete any business transactions through its website.  Id.  BikeBaron and

Sinclair, by contrast, do not merely receive communications from their website's viewers,

they allow viewers to complete purchases online and thereby enter into binding contracts

with them through the websites.  By allowing viewers to purchase their products online,

BikeBaron and Sinclair are "clearly do[ing] business over the [i]nternet."  Therefore,

their websites are best characterized as "interactive," tilting the Zippo scale in favor of

jurisdiction.

But specific jurisdiction requires more than minimum contacts with the forum

state—those contacts must also be related to the cause of action.  See Pecoraro, 340 F.3d

at 562.  QBP asserts several causes of action, each of which stems from the content of

BikeBaron and Sinclair's websites—namely, the posting of copyrighted images and

trademarks in connection with the promotion and sales of their products.  Thus, the

relationship between QBP's cause of action and BikeBaron's and Sinclair's contacts with

Minnesota is easily established.  Cf. Lakin, 348 F.3d at 711 (no specific jurisdiction

because cause of action not directly related to defendant's contacts with state through its

website).

The final factors to consider are the state's interest in providing a forum for

litigation and the convenience of the parties.  The Court finds these factors weigh in favor

of personal jurisdiction or, at the very least, balance equally.  Because the alleged harm is

monetary and reputational damage to QBP, a Minnesota company, the "injury" from the

alleged torts was suffered in Minnesota and Minnesota courts have routinely recognized

their interest in providing a forum for those injured in-state.  E.g., Christian v. Birch, 763

N.W.2d 50, 59 (Minn. Ct. App. 2009) ("Minnesota has an interest in providing a forum

for those injured in this state.") (citing Jepson v. General Cas. Co. of Wis., 513 N.W.2d

467, 472 (Minn. 1994)).  In addition, much of the relevant evidence and potential

witnesses are located in Minnesota—although, the Court acknowledges, an equal amount may be located with Defendant companies in Nevada.  Therefore, the convenience of the parties is a neutral factor in the Court's analysis.

Based on the foregoing, the Court concludes that QBP has demonstrated that BikeBaron and Sinclair have purposefully availed themselves of doing business in Minnesota and are therefore subject to personal jurisdiction here.  See, e.g., Zippo, 952 F. Supp. at 1125–26 ("We are being asked to determine whether [defendant's] conducting of electronic commerce with [the forum state's] residents constitutes the purposeful availment of doing business in [the forum state].  We conclude it does.").

### B.    Donnell's Contacts

QBP does not allege that Donnell has had any contacts with Minnesota.  Instead, it lumps all "Defendants" together, both in its Complaint and its Memorandum, alleging they are all subject to personal jurisdiction in Minnesota for advertising, selling, and distributing goods here.  But a person's "status as a corporate officer . . . alone cannot establish sufficient contacts to exercise personal jurisdiction." Stratasys, Inc. v. Protopulsion, No. A10-2257, 2011 WL 2750720, at *5 (Minn. Ct. App. July 18, 2011). QBP must establish that Donnell *himself* had sufficient contacts with Minnesota— whether in a personal or business capacity—to satisfy the Due Process Clause.  It may not attribute his companies' contacts to him.  Because QBP has not alleged any contact between Donnell and Minnesota and the record reflects none—except a single family vacation here thirty years ago—the Court concludes that Donnell should be dismissed from the action for lack of personal jurisdiction.

## II.      Motion to Transfer Venue

Defendants alternatively move to transfer venue to the District of Nevada under 28 U.S.C. § 1404(a), which provides that a court may transfer any action to another district where the action could have been brought "for the convenience of the parties and witnesses" and "in the interest of justice."   The plaintiff's choice of forum is another factor in the analysis.   Ahlstrom v. Clarent Corp., No. Civ. 02-780RHKSRN, 2002 WL 31856386, at *3 n.9 (D. Minn. Dec. 19, 2002).   The party seeking transfer bears the burden of proof to show that the balance of factors weighs strongly in favor of the movant.   Id.   Despite carrying the burden of proof, Defendants have identified no witnesses and no evidence located in Nevada in support of its Motion.   Nor have Defendants identified any "interest of justice" that would be served by transferring the case to Nevada.   (See Defs.' Mem. 22 ("[T]he interests of justice factors are essentially a nullity.").)   It appears that Defendants' Motion to Transfer is based wholly on its own desire and convenience and not on any objective weighing of the relevant factors. Therefore, the Court will deny its Motion.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Personal Jurisdiction, and Alternative Motion for Transfer of Venue (Doc. No. 4) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)      the Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** as to Defendant Lance Donnell and he is dismissed from this action;

(2)     the Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED** as to

BikeBaron, LLC and Sinclair Imports, LLC; and

(3)     the Motion to Transfer Venue is **DENIED**.[3]


Date:  July 10, 2013

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[3] The Motion to Dismiss for Failure to State a Claim (also Doc. No. 4) remains pending.